## Frankel *et al. v.* Smith *et al.*[*]

(Division B.    May 30, 1927.    Suggestions of Error Overruled June 23, 1927 and June 29, 1927.)

[113 So.   212.   No. 26272.]

1. Mortgages. *Wife cannot have bid on property sold under trust deed covering fictitious debt to her set aside on Supreme Court's reducing amount of husband's debt to her.*

  Where a husband gave a wife a deed of trust, a large amount of which was fictitious, and the wife is cognizant of all the facts and bids the property in at a sale during an appeal made from a decree fixing the amount of debt in her favor, and on appeal the Supreme Court reduces the amount fixed in the decree of the court below, this will not entitle the wife to have her bid set aside or the property resold on the idea that she only desired to bid the amount of her debt. The case does not make such a case of mistake of law or fact as would warrant the court in setting aside the sale at which her bid was made.

2. Mortgages. *Making attorney's fees charge on estate when creditors had deed of trust partly set aside held improper.*

  Where, in such case, the creditors of the husband file a creditor's bill to set aside such deed of trust, and succeed in setting aside two-thirds of the amount claimed thereunder, it is improper to allow attorney's fees as a charge on the estate unincumbered against such creditors for defending such suit.

*Corpus Juris-Cyc. References: Creditors' Suits, 15CJ, p. 1441, n. 11 New; Mortgages, 41CJ, p. 985, n. 23 New.

Appeal from chancery court of Sunflower county.

Hon. Lamar F. Easterling, Special Chancellor.

Suit by Leo Frankel and others against H. W. Smith and others to foreclose a deed of trust and for other relief. From an adverse decree, complainants appeal. Reversed in part, and affirmed in part and remanded.

*Watson & Jayne* and *B. B. Allen,* for appellants.

If, as we contend, the fraudulent scheme was that the Greenwood Grocery Company and Mrs. Nora D. Parker,

in order to defeat and defraud the unsecured creditors, should obtain title to all of the holdings of debtor W. D. Parker, through fictitious and fraudulent transfers and assignment, and under them by foreclosure thereof and through deeds and transfers to secure even valid debts, and they should so obtain title, it is "clearly void" and can stand for nothing, so far as we are concerned. And if these transactions fail, all its ragged habiliments fall with the corpse.

The averment that these appellees paid their own money to relieve the estate of valid encumbrances, which were in the way of appellants, and that to repay them would leave appellants in no worse condition than they were before is the magnet used by appellees to draw the attention of this court from the statute. In the first place, we deny the fact that they did so pay their own money out without reimbursement. In the next place, we say that if they did, they did it in an effort to defraud us and that the law denies them any indemnity. *Shands* v. *Dewise,* 4 John. 356; *Bean* v. *Smith,* 2 Mason 252; 2 Tucker's Com. 443; *Thompson* v. *Bickford,* 19 Min. 17; *Davis* v. *Leopold,* 87 N. Y. 620; *R. R. Co.* v. *Soutter,* 13 Wall. 523; *Stovall* v. *Bank of Memphis,* 8 S. & M. 305; *Thompson* v. *Van Vechten,* 27 N. Y. 577; *Garland* v. *Rives,* 4 Rand. 307; *Brown* v. *McDonald,* 1 Hill. 306; *Borland* v. *Walker,* 7 Ala. 269; *Montgomery* v. *McGuire,* 59 Miss. 196; 34 Miss. 88; and numerous others.

What right has Mrs. Nora D. Parker to charge anything in the way of attorneys' fees or otherwise as a tax against the very estate she was seeking to defraud, or to make any sort of charge for her operations under the fraudulent trust deed? On the other hand, she should be held to an accounting for its use and occupation during her several years of unlawful occupation thereof. And by no means should she be permitted now to come into a court of equity and ask to be relieved from the responsibility of her seventy-five thousand-dollar bid. She was caught in fraud and must suffer its penalty.

Equity will not relieve against fraud, but where the parties are found in fraud of their own making, it will leave them where it finds them.

I.  Where fraudulent grantors and fraudulent grantees enter into a conspiracy to defraud creditors and pay out money thereunder on prior indebtednesses, though a third person had actually parted with some money, yet he cannot recover it back. *McLean* v. *Letchford,* 60 Miss. 169.

"One is conclusively presumed to have intended fraud if it necessarily and logically results from his conduct." *Millard* v. *Cagle,* 46 Miss. 309.  See, also, *Harman* v. *Hoskins,* 56 Miss. 142; *Barwick* v. *Moyse,* 21 So. 238; *Goodwin* v. *Mitchell,* 38 So. 657.

II.  The bid of Mrs. Nora D. Parker of seventy-five thousand dollars under fraudulent and fictitious one hundred thousand-dollar trust deed sale, when the items making up this fictitious and pretended amount were merely imaginary, was such an act of fraud and an attempted fraud on rights of creditors that they were entitled to hold her for her bid; or if a re-sale, to hold her for any deficit reflected by such bid.  10 R. C. L., page 1315, section 111; 27 Cyc. 1486, 1702, 1734; 2 Jones on Mortgages (4 Ed.), page 667, section 1868; 6 C. J., page 839.

So we see that instead of taxing the estate with attorneys' fees and costs incident to such resale, as was done by the court in the case at bar, all costs should have been taxed against her, a resale ordered, and she held responsive to a judgment accordingly.  27 Cyc., page 1701.

In *Campe* v. *Saucier et al.,* 68 Miss. 278, 8 So. 846, there is laid down the rule of liability of one under a bid at auction sale, and it is as announced above by us.  To the same effect are: 10 R. C. L., page 1315; 19 R. C. L. 614; 3 S. & M. 508; 5 S. & M. 493; S. & M. ch. 345.

III.   Election of remedies is not a right that is vested in appellees to elect what course they will take as between themselves in dealing with the property which they had unlawfully and fraudulently acquired.   It is true something must be done about it; but the court will look to the best interests of those whom these fraudulent transactions had operated against, and in the light of their interests and them alone, determine.   20 C. J. at page 4; 9 R. C. L., page 959, section 4; *Peters Branch International Shoe Co.* v. *Gunn,* 121 Miss. 695, 83 So. 742; *Daly* v. *Sumpter Drug Co.,* 127 Tenn. 412, 155 S. W. 167, Ann. Cas. 1914 B 1101.

IV.   *Merger.*   It is further contended by appellants that when Mrs. Nora D. Parker, who was the mortgagee, took over under her fraudulently and unlawfully held note, any claim that she had on and to the property became merged into the legal title, and such claim became thereby extinguished; and that she thereafter held the property subject to the judgment liens of appellants. But see 27 cyc., page 482; 10 R. C. L., page 667, section 28; 21 C. J., page 1033; *Lewis* v. *Starke,* 10 S. & M., page 120 at 128.

V.   *Fraud.*   Our court in *Dixie Rubber Co.* v. *Catoe,* 110 So. 670, said that where partial consideration for a bond was illegal, the full consideration was illegal or tainted with illegality, and void.   See, also, *Ham* v. *Ham,* 110 So. 583; *Harney* v. *Pack et al.,* 4 S. & M. 229; *Bogard* v. *Gardley,* 4 S. & M. 302; *Catchings* v. *Manlove,* 39 Miss. 655; *Pope* v. *Pope,* 40 Miss. 516; *First Nat'l Bank of Meridian* v. *Strauss,* 66 Miss. 484, 6 So. 232; *Brister* v. *Moore,* 16 So. 597, 12 R. C. L., page 475, section 8; *Caldwell* v. *Walker,* 76 Miss. 879, 25 So. 929; *May & Vaught* v. *Taylor,* 62 Miss. 500; *Stovall* v. *Bank of Memphis,* 8 S. & M. 305; *Rothenberg* v. *Bradley,* 69 Miss. 1, 10 So. 922; *Dillard & Coffin Co.* v. *Smith et al.,* 59 S. W. 1010; Wait on Fraud, "Conveyances" (2 Ed.), page 259; 2

Bigelow on Fraud, page 398; Bump on Fraudulent Conveyances, 14.

The best case in point on practically every point in the instant case is *McLean et al. v. Letchford et al.*, 60 Miss. 169. Mrs. Nora D. Parker cannot be heard to claim any sort of interest in debtor's property as she went into the scheme to aid in defrauding the creditors of her husband. This case should be reversed and a personal decree entered here against both Mrs. Nora D. Parker and the Greenwood Grocery Company.

*Neil, Clark & White, Pollard & Hamner* and *J. B. Guthrie,* for appellees.

Counsel for appellants complain of the testimony of W. D. Parker as to the value of the property covered by the trust deed to Nora D. Parker at the time foreclosure sale was made thereof. Our position is that this testimony is in nowise harmful to appellants as the right of Nora D. Parker to tender the property foreclosed back into court rests on the principle of mistake of fact or law at the time of the foreclosure sale, and not on the question of the value of the property. Regardless of the value of the property, if Mrs. Parker appeared at the sale and bid under a mistake of law or fact, she is entitled, in a court of equity, to relief; and when the property was tendered back into court subject to the equities of all parties to the suit, appellants have not been injured or prejudiced and cannot complain; consequently, this assignment of error is without merit.

Another assignment of errors is that J. B. Guthrie, attorney for Mrs. Nora D. Parker, was allowed to testify as to attorney's fee on the note given by W. D. Parker to Mrs. Nora D. Parker, and that the court below allowed a fee of four thousand five hundred dollars to Mrs. Nora D. Parker for collection of the amount due under the note and to protect her security under the litigation pending.

Guthrie testified that the note of W. D. Parker in favor of Nora D. Parker was turned over to him for collection and that the note carried a provision for ten per cent attorney's fee and that default was made in the payment of the indebtedness secured. The supreme court held the indebtedness due under the note to be thirty-five thousand dollars and interest, consequently the attorney's fee on this amount became and was fixed under the first provision of the trust deed quoted at ten per cent of that amount. Under the second provision of the trust deed quoted, the trust deed contract provided for a reasonable attorney's fee if it should become necessary to enforce or protect the trust deed by proceedings in any court. Consequently, under the trust deed contract, it became a question for the court to determine as to what composed a "reasonable fee." The lower court passed on the testimony and fixed as a reasonable attorney's fee the sum of four thousand five hundred dollars which, from the testimony, he had a right to do and which, we admit, is not a fee that can be complained of by the creditors of W. D. Parker.

Counsel charges that Mrs. Parker, in causing the trust deed from W. D. Parker to be foreclosed after her debt and security had been held good for one hundred thousand dollars by the court below and no appeal had been taken from this finding, was guilty of fraud.

The property consisted principally of farm lands and had to be operated and in order to do this under the existing circumstances, the title had to be cleared. We fail to see a semblance of fraud in her duly advertising and selling the property under the trust deed. The foreclosure sale was later set aside by the court at her own suggestion and complaining creditors were left in the very same status as they were prior to such foreclosure. Consequently, we fail entirely in getting the viewpoint of argument of appellants' counsel as to fraud in her action in this connection. The repeated references to fraud and the numerous authorities cited in brief of appellants'

counsel to sustain the principles attempted to be established in fraud are simply not applicable to this case. We have no quarrel with the authorities cited applicable to cases in fraud, where the proof is sufficient; but in this case we do not deem it necessary to take up the time of this court framing a reply to these charges and specifically pointing out that the authorities cited cannot be applied, as it is palpable that the issue of fraud has now been eliminated in this case. This court on former appeal settled the validity of Mrs. Parker's trust deed as security for thirty-five thousand dollars and interest, and the only thing she has tried to do since the court so found is to get her money or to subject the security held by her to the payment of her debt.

Another assignment of error concerns the question whether or not Mrs. Parker had the right, after foreclosing the W. D. Parker trust deed and after appearing at the foreclosure sale and bidding in the property thereby secured at the sum of seventy-five thousand on her debt, to have the foreclosure sale thereon set aside and tender the property back into court and to have the same resold by a commissioner of the court subject to the respective interests of the parties to this litigation. We maintain that she had this right under the proof and circumstances of this case, and will endeavor to show to the court ample legal precedent and equitable legal principles for the establishment of the same.

Mrs. Parker appeared at the foreclosure sale and bid for the property under a mistake of fact as to the amount of money constituting her indebtedness and secured by the trust deed foreclosed. Equity has the right and power and should relieve under such mistake of fe st.

Under a discussion of the question as to how far equity will relieve against mistakes of law, this court quotes with approval *Northrop* v. *Graves,* 19 Conn. 548. See, also, *Sparks* v. *Pittman,* 51 Miss. 511; *Powell* v. *Plant,* 23 So. 399.

Where one appears at a public sale and bids with the understanding that his indebtedness will first be paid from the proceeds when, as a matter of fact, the sale is made subject to a prior claim, equity will relieve and set the sale aside on the ground of mistake as to the terms of the sale. *German-American Nat'l Bank* v. *Interstate Trust & Banking Co.,* 75 So. 591.

Where one appears and bids in property for a husband when he is laboring under the impression that he appears and bids for the husband and wife, the sale will be set aside and the bidder relieved of responsibility on the ground of mistake. *Brown* v. *Sanders,* 75 So. 645.

Authorities cited by appellants' counsel deal with the principle of bidders appearing at public sales and bidding with full knowledge of all of the facts, and the authorities cited deal with such cases. None of the authorities deal with sales wherein the bidder labors under a mistake of fact or of law pertaining to his legal rights, interests, estates or personal status, and, consequently, are not applicable to the circumstances of the case before the court relative to Mrs. Parker.

Argued orally by *B. B. Allen,* for appellants, and *W. M. Hamner* and *A. B. Clark,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

Leo Frankel, formerly the owner of certain real estate in Sunflower county, Miss., sold the same to H. W. Smith for a part cash payment and notes evidencing the deferred balance, which were secured by a deed of trust upon the lands sold. Subsequently Smith sold the land to W. D. Parker, who assumed Smith's debt to Frankel. The notes secured by the deed of trust were not paid when due; and Frankel filed a bill in the chancery court seeking to foreclose the deed of trust upon the land so sold to Smith, and by Smith to Parker, and also asked for a personal decree against Parker for the amount unpaid which he

had assumed under Smith's contract to him. Some of the Frankel notes had been assigned to a bank in Greenville, Miss., and the bank joined with Frankel in the suit to foreclose the deed of trust and to recover the balance due against Parker under his agreement to assume Smith's debt. Some other of the Smith notes had been assigned to different parties, and these parties had requested the trustee to foreclose in order to secure the payment of their notes; and the trustee did advertise and sell the said lands to satisfy such notes, and the holders of those notes bid the property in for a small sum. Frankel received notice of this transaction on April 1, 1922, after the trustee's sale, through a letter from the trustee in which was inclosed a check for Frankel's *pro rata* part of the purchase money. He rejected same, returning the check to the trustee, and filed an amended bill of complaint seeking additional relief by canceling the foreclosure deed and seeking a foreclosure in equity. Later on Frankel purchased the other holders' interest in the notes, and they disappeared from the suit.

On May 12, 1922, Frankel learned that W. D. Parker had given his wife a deed of trust, for one hundred thousand dollars, on a plantation, known as the Klondike plantation, near Moorhead, Miss., owned by him, and in this deed of trust Parker had conveyed a certain series of notes, twenty in number, aggregating three hundred forty thousand dollars, given to him by Stone and Toler for the purchase money of certain lands which they had bought from Parker, and that Parker had also conveyed other property to secure the said deed of trust. Frankel and others filed a second bill setting up that such conveyance was fraudulent as to their rights against Parker, and amended the bill by making Parker and Mrs. Parker parties defendant, and also the Greenwood Grocery Company, which company was in possession of certain of the Stone and Toler notes, and sought to set aside the sale of the deed of trust from W. D. Parker to Mrs. Norah D. Parker and the assignment of the Stone and

Toler notes to the Greenwood Grocery Company. Mrs. Parker answered the bill, denying the fraud, and claimed that she had borrowed thirty-five thousand dollars from the Maxwell Investment Company and had loaned it to W. D. Parker, her husband, to pay a note due by him to the Wilson Banking Company, and that he owed her various and sundry other sums ranging back as far as 1902 for money alleged to be owing her from him in excess of sixty-five thousand dollars, additional to the thirty-five thousand dollars loaned him.

In 1919, Mrs. Parker owned a section of land in the Klondike plantation, and her husband owned the remainder. They sold this land to Stone and Toler for about seven hundred thousand dollars, taking about two hundred fifty thousand dollars cash out of the deal within a year of the sale. Certain persons, unnecessary to name, had secured judgments against Parker, and the bill was then amended so as to make it also a general creditor's bill. The bill sought to set aside for the creditors of W. D. Parker the deed of trust to his wife, above mentioned, and the assignment of the Stone and Toler notes. Upon hearing the cause the court dismissed the bill as to Mrs. Parker and the Greenwood Grocery Company, and from the decree so dismissing the bill, it was appealed to this court and reversed, the opinion of the court thereon appearing in 103 So. 16. In this opinion, the court held that the indebtedness secured by the deed of trust from W. D. Parker to Norah D. Parker was valid only to the extent of thirty-five thousand dollars, and that the remainder of the indebtedness was fictitious, and set aside the sale of the Stone and Toler notes to the Greenwood Grocery Company. After such litigation, and before the decision in the supreme court, the deed of trust from W. D. Parker to Mrs. Norah D. Parker was foreclosed, and Mrs. Parker purchased the property at a trustee's sale for seventy-five thousand dollars, and the trustee credited this amount on the notes given Mrs. Norah D. Parker by W. D. Parker.

When the cause was remanded, the complainants amended their bill, seeking to recover the difference between the seventy-five thousand dollars, bid by Mrs. Parker at the trustee's sale, and the thirty-five thousand dollars adjudicated by the supreme court as being the amount which W. D. Parker owed Mrs. Parker, and to re-quire her to pay this amount and to subject it to the demands of the complainants. Mrs. Parker filed an answer and cross-bill to this amended bill setting up that she bid seventy-five thousand dollars on the belief that her deed of trust was valid; that no money passed; that the bid was not a money bid, but a bid on her indebtedness; and that she thought she was entitled to pay her bid by having the same credited upon the note of her husband to her. She offered in the cross-bill to have the sale set aside and the *status quo* restored to what it was prior to the sale, and asked that the sum due her, with interest thereon, together with certain attorneys' fees provided for in the deed of trust and notes to W. D. Parker and herself, be added to her debt, and that the property be resold to pay the sum. This application on the part of Mrs. Parker was allowed and sustained by the court; and a decree was entered accordingly setting aside the former sale, ordering a resale, and finding and allowing fees for the attorneys representing the defendant Mrs. W. D. Parker in the said suits. The sum owing to Mrs. Parker by this decree amounted to forty-eight thousand dollars. The property was readvertised and resold, and at the sale of same it brought less than the amount adjudged to Mrs. Parker at the first sale, all of which was done over the objection of appellants.

From the showing in the record, we think the court erred in setting aside this sale and the bid, on the application of Mrs. Parker. Mrs. Parker was cognizant of the whole transaction and thoroughly familiar with all the facts at the time she made the bid; and the record does not make such a case of mistake of fact and law as would warrant the court to set aside the sale. The facts in the

case do not make such a case of mistake of law as to afford ground for equitable relief in her favor. There are, of course, situations where equity will relieve for mistakes of law; but the present case does not present a case falling within the principles governing such situations.

We think also that it was error for the court to allow attorneys' fees provided for in the deed of trust against the property in this suit on the facts contained in the record. The deed of trust contained a stipulation for reasonable attorneys' fees for its defense in case of attack, and that was to be charged against the property, being a contract between Mr. Parker and Mrs. Parker. The attorney in the suit prosecuted was employed for the purpose of defending and maintaining the instrument for one hundred thousand dollars, sixty-five thousand dollars of which was fictitious and fraudulent as to the creditors of W. D. Parker. If the suit had proceeded on the theory of defense as to the real validity of the instrument and had been sustained, such suit would, of course, be upheld. The suit, however, was an effort to maintain a fraud, and the creditors had to attack it as being fraudulent; and they sustained their suit to practically two-thirds of the amount of the deed of trust. To uphold fraud and make such fees a charge upon the land would be to make the courts an instrumentality to aid fraud and wrong. The suit was not an effort to collect the notes from W. D. Parker personally, and the attorneys' fees provided for in his notes should not have been allowed against the complainants' rights in this suit on the real estate embraced in the deed of trust. Of course, Mr. Parker would be liable to Mrs. Parker for attorneys' fees incurred by her in collecting the note against him. The judgment of the lower court will therefore be reversed as to Mrs. Norah D. Parker, and she will be required to pay the difference in the debt of thirty-five thousand dollars, with interest, and the amount of her former bid, interest to be calculated from maturity to the date of bid.

As to the appellee, the Greenwood Grocery Company, the rights of that company, fixed by final decree of May 12, 1926, will be affirmed; but inasmuch as the reversal of the cause as to Mrs. Parker will necessarily change clause B of paragraph 4, fixing the rights of Mrs. Norah D. Parker secondary to the Greenwood Grocery Company and prior to the complainants in the Stone and Toler notes, that clause of the paragraph will be eliminated; and as the reversal of the decree as to Mrs. Parker holding to her former bid by bidding at the commissioner's sale, ordered by the final decree of May 12, 1926, the commissioner's sale will be set aside and the court below will fix the date for a new sale to be made, in order that all parties may protect their interests in accordance with such decree, as modified by this judgment; and, in addition to selling the lands securing the Stone and Toler notes, the court will direct the commissioner, after selling the lands, to credit the Stone and Toler notes with the amount bid for such lands at said sale, and then sell notes at public outcry for the balance due thereon and apply the proceeds thereof in accordance with this opinion.

*Reversed in part and affirmed in part and remanded.*